STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. MICHAEL GRANDON, PLAINTIFF IN ERROR.

Submitted May 18, 1929—Decided November 15, 1929.

Before Justices TRENCHARD, LLOYD and CASE.

For the plaintiff in error, *Harold Simandl.*

For the defendant in error, *Joseph L. Smith,* prosecutor of the pleas, and *Simon L. Fisch,* assistant prosecutor of the pleas.

PER CURIAM.

The defendant below, Michael Grandon, was convicted in the Essex Sessions upon an indictment charging him with

assault and battery upon one O'Hagan by shooting O'Hagan with a pistol. The case comes up both by strict writ of error and under section 136 of the Criminal Procedure act.

It is first argued that the verdict is against the weight of the evidence. We cannot say that it is.

A witness, Solomon, produced by the state testified in effect as follows: On the morning of June 9th, about six-forty, he was driving north on Washington street, Newark, near the corner of William street, when a fight between two men attracted his attention. One man was O'Hagan and the other, he afterwards learned, was one Lyons. Several persons were gathered about looking on. He stopped his car and watched the fight for about ten minutes, and then he saw the defendant Grandon coming from William street, work his way around the edge of the crowd, get in between the two men fighting, draw a gun from his right hand pocket and shoot at O'Hagan twice while O'Hagan was up against the wall, and while Grandon was facing the witness so that the witness had a clear view of him. Grandon shot from a distance of three feet. After Grandon fired the second shot, one of the crowd pulled Grandon's arm away, and then Grandon turned around and ran down William street on the south side, closely followed by the witness in his Ford. Upon reaching Halsey street Grandon turned to the right, still running, and on Halsey street, half way between William and Hill streets, Grandon turned into an alley and took something from his pocket and threw it into the alley, then came right out and almost bumped into the car of the witness, and ran diagonally across the street, and turned left on Hill street, still running, until he came to No. 27. There he jumped the fence and disappeared into the basement. Solomon, the witness, drove to police headquarters, and reported to detectives what he had seen. The detectives and Solomon, in the latter's car, went to No. 27 Hill street, and Solomon saw defendant coming out of the basement and pointed him out to the detectives as the man who fired the shots, and he was arrested. Solomon then went to the alley and found the gun and turned it over to the detectives.

The testimony given by Solomon was corroborated by the officers so far as it related to matters in their presence, who further testified that the gun contained two empty shells.

At the trial defendant admitted that when he was arrested he asked the officers "what it was all about." His testimony was to the following effect: That on the morning of June 9th, he was in the company of one Seclo driving south on Washington street; that as they approached the corner of William street he heard some commotion on the corner, and got out of the automobile to see what the commotion was; that as he did so he heard some shots and started to run; that he was excited and ran for safety, because he did not want to get in trouble or to get shot; that he ran straight down William street to Halsey street, turned right on Halsey street and kept on running; that he ran on the right side of Halsey until he came to Pearl alley; at that point he came across an automobile, then crossed to the left side of Halsey, down to Hill street, turned left on Hill street and still kept on running, although he did not think anybody was following him, all the time running as fast as he could until he came to his house, No. 27 Hill street, and ran into the basement. It will thus be seen that his testimony corroborates many of the material matters testified to by Solomon. We think that it was for the jury to say whether as he says he was running to escape the danger of the shooting or was really running to escape arrest as the jury evidently concluded.

It does appear in the case that O'Hagan before and at the trial refused to identify the defendant as the man who had shot him.

After a careful examination of all the evidence, that to which we have referred and that to which we have not referred herein, we think that the testimony amply warranted the jury in finding the defendant guilty, and we cannot say that their verdict was contrary to the weight of the evidence.

Numerous assignments of error relate to the alleged erroneous admission or rejection of evidence.

First, a question put by defendant's counsel to a doctor on examination as follows: *Q.* "Did you have any difficulty

with him on that score?" This question was overruled as calling for a conclusion. We think its exclusion might be sustained upon that ground, but if not, its exclusion was not prejudicial, because similar questions were asked and answered.

The next question was put to John Campbell, who helped take the wounded man to the hospital in a taxi cab. On cross-examination by counsel for the defense he was asked: Q. "On the way to the hospital did you speak to O'Hagan? A. Yes. Q. What did he say?" This question was objected to and the objection sustained as not proper cross-examination, that subject-matter not having been introduced in the main examination. Whether this reason was sufficient to sustain the objection may be questionable, but even so we think there was no prejudicial error because the same question was subsequently answered later during the cross-examination.

The next assignment relates to the examination of the detective who took Grandon to the hospital and to O'Hagan's bedside. The detective testified that when they got there he saw Grandon nod or shake his head from side to side, and that when they got to police headquarters he asked Grandon why he shook his head, and Grandon said he did it unintentionally; that he did not mean to do it. Then counsel for defendant put this question to the detective: Q. "Did it appear to be an unintentional nodding of the head?" Objection was made to that and the objection was sustained. This shaking of the head had been fully described by the witness, and we think the question whether or not the nod was unintentional was purely a question for the jury to determine, the sole function of the witness being to relate what he had seen and heard.

We have examined the other assignments of error and causes for reversal, and do not find any of them which we think will justify a reversal. For the most part the true question is whether there was any error in the admission or rejection of the evidence which was prejudicial to the defendant. We do not find any after full examination.

The judgment will be affirmed.